438

## Graszkowski v. White Brothers Smelting Corporation

*Abraham J. Levy,* for plaintiff; *Swartz & Campbell,* for defendant.

ALESSANDRONI, J., March 3, 1933.—The amended statement of claim sets forth that the plaintiff was employed as a laborer by the defendant corporation, the latter being engaged in mining, refining, smelting and manufacturing various lead products and other metals in the City of Philadelphia; that on or about May 4, 1931, plaintiff contracted lead poisoning as a result of the negligence of the defendant in that the defendant failed to maintain exhaust fans and ventilating devices in accordance with the provisions of the Act of May 2, 1905, P. L. 352, in that the defendant failed to warn and instruct the plaintiff as to the dangerous nature of the lead fumes, in that the defendant failed to equip its plant and employes with safe equipment and appliances and in that the defendant failed to provide the plaintiff with a respirator and to make monthly medical examinations of the plaintiff as required by the Act of July 26, 1913, P. L. 1363, as a result of which plaintiff suffered serious injuries. The affidavit of defense in lieu of demurrer declares that the amended statement of claim sets forth no legal action, that lead poisoning was one of the risks of employment which the plaintiff assumed, that the Workmen's Compensation Act controls, that the amended statement of claim is vague and indefinite, and that conclusions of law are set forth in paragraph five.

The sufficiency of the original statement of claim was questioned in an affidavit of defense raising questions of law, and as the statement of claim was poorly pleaded, plaintiff was directed to amend his pleading. The amended statement of claim, the sufficiency of which is now questioned, remedied the defects appearing in the original statement of claim. Plaintiff has averred sufficient facts to establish the existence of an occupational disease caused by defendant's negligence and not embraced within the provisions of the Workmen's Compensation Act. While the defendant has not argued the substantive questions raised in as great detail as when originally before this court, the

affidavit of defense in lieu of demurrer sets forth the same reasons originally urged, and, therefore, requires our full consideration.

The defendant first argues that unless there is a waiver of the provisions of the Workmen's Compensation Act no employe can recover from his employer for injuries arising in the course of his employment. Numerous cases were cited by the defendant in support of this proposition, but none of them include cases of occupational diseases. The law is firmly established that the Workmen's Compensation Act does not cover occupational diseases: McCauley *v.* Imperial Woolen Co. et al., 261 Pa. 312, 326-327. In that case, the court, considering the scope of the Workmen's Compensation Act, stated:

"Section 1, of the Act of 1915, supra, provides that the statute shall apply to 'all accidents' occurring within this Commonwealth; this being limited by section 301 (P. L. 738) to cases where the employer and employee shall by agreement, 'either express or implied,' accept the provisions of the act. The section in question provides that, in such instances, 'compensation for personal injury to, or for the death of, such employee, by an accident, in the course of his employment, shall be made.' It then provides that 'the terms "injury" and "personal injury" . . . shall be construed to mean only violence to the physical structure of the body, and such disease or infection as naturally results therefrom,' and, wherever death is mentioned, 'it shall mean only death resulting from such violence and its resultant effects;' further, that 'the term "injury by an accident in the course of his employment" . . . shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee or because of his employment, but shall include all other injuries sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer.' It is plain from these provisions that the act before us contemplates injuries by accident only, and, therefore, does not cover what are termed 'occupational diseases.' "

It, therefore, is clear that the Workmen's Compensation Act was not intended to cover the case of occupational diseases.

Defendant, however, reasons that the act controls all rights of action between employe and employer for injuries suffered in the course of employment, and as occupational diseases are excluded, no recovery lies. Such reasoning is palpably erroneous, for the Workmen's Compensation Act clearly is limited to injuries arising as the result of an accident. Section 301 states that the scope of the act shall be "for compensation for personal injury to or for the death of such employee, by an accident, in the course of his employment, shall be made in all cases by the employer, without regard to negligence. . . ." Moreover, section 301 further provides that "The terms 'injury' and 'personal injury' as used in this act shall be construed to mean only violence to the physical structure of the body, and such disease or infection as naturally results therefrom. . . ." It can be readily seen that the provisions of the act, as indicated by the above language, are confined to injuries resulting from accidents and such as result from violence to the physical structure of the body. The mere fact that the act deals with one phase of the relationship between employer and employe cannot possibly be construed as meaning that every other obligation existing between employer and employe is rendered a nullity. The act is limited to injuries to employes caused by accidents and is not concerned with any other phase of the relation or liabilities existing between employer and employe. We know of no principle of statutory construction which states that where an act deals with one subject or one phase of a subject, every related subject or phase of that subject is by necessary implication abolished and the rights existing

440

under such relations destroyed. An act must be confined to the subject matter which it covers, and in this case it is expressly limited to injuries arising from accidents. Therefore, section 303 of the compensation act, which provides that employes accepting the provisions of the act release their right of action for injuries against the employer, must be logically construed as limited to the subject matter covered in the act.

There are no reported decisions covering this question in Pennsylvania. In the case of Zajkowski v. American Steel and Wire Co., 258 Fed. 9, a similar question was raised in construing provisions of the Workmen's Compensation Act of Ohio, and the court stated (page 14) :

"It results, in view of the controlling authority of these decisions, [referring to decisions which indicate that the Workmen's Compensation Act does not apply to occupational diseases] that the Compensation Act is inapplicable, and, it need not be said, that the exemption from liability given by section 23 of the Compensation Act to employers who comply with the provisions of section 22, and the exceptions contained in section 29 in relation to employers who are open to the charge of wilful acts or failure to perform any lawful requirement within the meaning of that section, are not of present importance. It cannot be that the Compensation Act was designed to take away any right of action as respects a claim, like the one here involved, which the act does not purport to include or to allow to be paid out of the insurance fund. Any view to the contrary must ascribe to the General Assembly at once a purpose to frustrate the power vested by the Constitution in respect of occupational disease and a lack of purpose through sections 6330-1 to grant relief of any character to employees contracting such disease."

We, therefore, are of the opinion that the plaintiff's injury, not arising from an accident, is not within the provisions of the Workmen's Compensation Act.

The question, therefore, remains as to whether the plaintiff has set forth a legal cause of action such as existed at common law. The plaintiff has set forth that he was a laborer and that the defendant was negligent in that he failed to warn and instruct the plaintiff as to the dangerous nature of the lead fumes. In Zajkowski v. American Steel and Wire Co., supra, a similar question was raised and the court held that such failure on the part of the employer constituted negligence upon which an employe could recover. As stated by the court (page 11) :

"The case set out in the petition falls well within principles of the common law. The general rule is that where an employer places and continues an employée for a substantial length of time in the regular performance of work and under conditions which, in the absence of preventive means and precautions, are calculated to engender in the employée a disorder of serious and injurious character, regardless of the name by which the disease is known, it is the duty of the employer to warn and instruct the employée as to the dangers and to furnish him with reasonably effective means to avoid them, and where as the direct result of failure to perform this duty an employée in the exercise of reasonable care suffers injury through a disorder so contracted, he is entitled to recover. Wiseman v. Carter White Lead Co., 100 Neb. 584, 587, 589, 160 N. W. 985; Thompson v. United Laboratories Co., 221 Mass. 276, 280, 108 N. E. 1042; Fox v. Peninsular, etc., Works, 84 Mich. 676, 682, 48 N. W. 203; Wagner v. Jayne Chemical Co., 147 Pa. 475, 479, 23 Atl. 772, 30 Am. St. Rep. 745; Meany v. Standard Oil Co., (N. J. Sup.) 55 Atl. 653; Pigeon v. Fuller, 156 Cal. 691, 698, 701, 105 Pac. 976."

The court in its opinion relied upon the case of Wagner v. H. W. Jayne Chemical Co., 147 Pa. 475, as authority for its conclusion. In that case the facts were

somewhat similar to the matter before us and the court decided that a laborer cannot be expected to know chemical reactions of certain gases and that a failure of the employer to warn the employe constituted negligence, thus:

"It is a well settled rule of law that an employee will be deemed to have assumed all the risks naturally and reasonably incident to his employment, and to have notice of all risks which, to a person of his experience and understanding, are, or ought to be, open and obvious. This is a reasonable rule. . . . But when the reason of the rule fails, the rule itself ceases to have any application. And therefore, while the physician would have no ground of complaint if his health should be permanently impaired by reason of exposure at the call of a patient, to a contagious or infectious disease, he might recover damages for the slightest injury suffered in consequence of a defect in the floor of the house which he was invited to enter, unknown to him but which was known or ought to have been known to his patron; and this because there is nothing in the science of medicine, in which he professes to be learned, to affect him with notice of the latter danger. Neither is there anything in the employment of a common laborer that presupposes any scientific knowledge, such as a knowledge of the properties of acids, or that poisonous fumes are likely to be evolved in a manufacturing process in which nitric acid is used; and for that reason, the law does not presume that such laborer either possesses or professes such knowledge. . . . Without some such previous knowledge, either scientific or experimental, the dangers, if any there be, of exposure to the fumes of nitric acid would not be open and obvious, and the laborer could not, with propriety, be deemed to have assumed such risks unknown to him as are naturally and reasonably incident to his employment: Rummell v. Dilworth, 111 Pa. 343.

"On the other hand, it is equally well settled that an employer is bound to exercise reasonable precaution against injury to his employees while they are in his service and obeying his orders. Not only must he provide suitable implements and means with which to carry on the business which he sets them to do, but he must warn them of all the dangers to which they will be exposed in the course of their employment, except those which the employee may be deemed to have foreseen as necessarily incidental to the employment in which he engages, or which may be open and obvious to a person of his experience and understanding, and except, also, such as the employer cannot be deemed to have foreseen. And the employer will be presumed to be familiar with the dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged. Authorities upon these points may be found in great abundance in the notes to §§ 185 to 203 of Shearman and Redfield on Negligence."

The plaintiff, therefore, has sufficiently set forth an act of negligence on the part of the defendant which would support a verdict. However, the plaintiff has also set forth the violation of certain laws of this jurisdiction requiring the use of safety devices in certain cases. A violation of such law by the employer forms the basis of a good cause of action. The court in Fritz v. The Elk Tanning Co., 258 Pa. 180, in considering this question (page 187):

"As the case was submitted, the verdict implies a finding by the jury not only that the fumes were poisonous but that such fact was or should have been known by the defendant, which was the common law rule; but under Section 11 of the Act of May 2, 1905, P. L. 352, it was defendant's duty to know the character of the fumes and gases arising in its bleach room, and if poisonous to provide for their elimination by exhaust fans or other sufficient devices. As no attempt was made to comply with the statute, and no claim that it could not have been done, if the fumes were poisonous and plaintiff was injured thereby, without negligence on his part, he was entitled to recover, as the provisions of

the statute are mandatory: Jones *v*. American Caramel Co., 225 Pa. 644; Lanahan *v*. Arasapha Mfg. Co., 240 Pa. 292; Kelliher *v*. Brown & Co., 242 Pa. 499; and see Krutlies *v*. Bulls Head Coal Co., 249 Pa. 162."

The above authorities sufficiently establish the right of action of the plaintiff, and the affidavit of defense in lieu of demurrer is not sustained.

And now, to wit, March 3, 1933, the affidavit of defense in lieu of demurrer is not sustained. Leave is granted the defendant to file an affidavit of defense upon the merits of the case within fifteen days.